IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**DAVID HOYT,** §
§
    Plaintiff, §
§
v. § Civil Action No. **3:20-CV-545-L**
§
**AMERICAN NATIONAL INSURANCE** §
**COMPANY,** §
§
    Defendant. §

## MEMORANDUM OPINION AND ORDER

Before the court is American National Insurance Company's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion" or "Motion to Dismiss") (Doc. 17), filed August 31, 2020. After considering the Motion, briefs of the parties, pleadings, and applicable law, the court, for the reasons herein explained, **denies** American National Insurance Company's Motion (Doc. 17).

**I. Factual and Procedural Background**

David Hoyt ("Plaintiff" or "Mr. Hoyt") brought this action on March 3, 2020, against his former employer American National Insurance Company ("Defendant" or "American National" or "ANICO"). In his Amended Complaint, Mr. Hoyt alleges that American National's "actions in discriminating and retaliating against [him], including [demoting him and] discharging [his] employment, were intentional acts of racial discrimination and retaliation." Pl.'s Am. Compl. ¶ 23. Mr. Hoyt contends that American National intentionally discriminated and retaliated against him because of his race (African American) for the specific purpose of interfering with his rights and Defendant's contractual obligations in violation of 42 U.S.C. § 1981. *Id.* In support of these claims, Plaintiff alleges as follows:

**Memorandum Opinion and Order – Page 1**

9. Defendant employed Plaintiff beginning in 2007 as Agent and promoted him to District Manager in approximately 2013. Over the years[,] Plaintiff has consistently been a top performer, having received numerous awards.

10. Plaintiff reported to Field Director John Gara, who reported to Vice President Wayne Smith and Executive Vice President Hoyt Strickland. Gara, Smith and Strickland are Caucasian. There are approximately fifty-two (52) District Managers under Smith and Strickland, with most of them, including Plaintiff and James Parks (Caucasian), reporting directly to Gara. (Some of the 52 District Managers report directly to Gara's peer, Field Director Richard Villanueva, who also reports to Smith and Strickland.)

11. On May 24, 2019, Gara visited Plaintiff's district. Following the visit[,] Gara admitted he found Hoyte's district to be well-run.

12. However, on May 28, 2019, Gara demoted Plaintiff when he attempted to have him sign an employment agreement for the position of Agent, and transfer him to a less profitable district, claiming [that] Plaintiff violated the clause in his district manager agreement providing that he would engage in no other "business, calling or employment" during his employment with ANICO.

13. Hoyte refused to sign the Agent agreement. The demotion would have decreased his guaranteed weekly compensation by at least 15% for the current quarter and 40% for the next quarter, which had already been fulfilled by his performance, followed by an approximate 60% to 70% reduction in total compensation. As Agent, he would not have been eligible for as many bonuses as he had been eligible for as district manager.

14. Hoyte engaged in other personal investment endeavors unrelated to ANICO; specifically, he had real estate investments, bought and resold cars, and traded in the foreign exchange market. However, Caucasian ANICO district managers, including but not limited to James Parks, pursue other personal investment endeavors unrelated to ANICO and have not been demoted to Agent, or terminated. Parks also had real estate investments, bought and resold cars and traded in the foreign exchange market during his employment with ANICO. Plaintiff's race, African-American, was [,]therefore[,] the but for cause of his demotion.

15. Plaintiff complained to Gara and Strickland regarding the demotion being unlawful and requested written confirmation of the reason for his demotion. Gara and Strickland did not respond to this request of Plaintiff.

16. On June 4, 2019, Plaintiff forwarded this complaint to CEO Jim Pozzi.

17. When he received no response, he complained to Human Resources' Theresa Price on June 18, 2019[,] and again to Pozzi, that his demotion was

> rac[ially] discriminatory, and requested an investigation and reinstatement to his district manager position.
>
> 18. ANICO suspended Hoyte's employment.
>
> 19. Less than a week after his complaint of race discrimination, on June 21, 2019, ANICO dismissed Plaintiff's complaint as unsubstantiated and terminated his employment, by letter from Vice President Wayne Smith. Plaintiff's race (African-American) and his protected activity were [,]therefore[,] the but for causes of his termination.
>
> 20. Upon information and belief, Defendant has replaced Plaintiff in his position with a Caucasian male; specifically[,] James Parks (Caucasian).

Pl.'s Am. Compl. ¶¶ 9-20. Plaintiff further alleges that the foregoing conduct violated section 1981:

> 22. Defendant discriminated against Plaintiff in the making of a contract of employment on the same terms it offered to non-black and/or non-African American employees including James Parks and/or employees that did not protest discrimination including James Parks, and that Plaintiff's race and complaints were the but for cause of Defendant's acts of discrimination and retaliation. Such refusal was undertaken for the purpose of interfering with and avoiding the rights of Plaintiff and the contractual obligations of Defendant in violation of 42 U.S.C. § 1981.
>
> 23. Defendant's actions in discriminating and retaliating against Plaintiff, including discharging Plaintiff's employment, were intentional acts of racial discrimination and retaliation in violation of 42 U.S.C. § 1981.
>
> 24. Defendant's actions were undertaken for the specific purpose of interfering with and avoiding the rights of Plaintiff and the contractual obligations of Defendant in violation of 42 U.S.C. § 1981.

Pl.'s Am. Compl. ¶¶ 22-24.

On August 31, 2020, American National moved to dismiss the section 1981 racial discrimination and retaliation claims alleged in Plaintiff's amended pleadings, which it contends incorporate the June 4, 2019 internal complaint he made to CEO Jim Pozzi. Defendant argues that Plaintiff's allegations—that he was demoted because of his race, and that his employment was terminated either because of his race or because he complained about his demotion—are

conclusory and insufficient to state plausible claims based on racial discrimination or retaliation under section 1981. Defendant further argues that both claims fail, as a matter of law, because the facts alleged in Plaintiff's Amended Complaint provide an obvious and more plausible alternative explanation for his alleged injury—"that he was demoted for *admittedly violating his district manager agreement[,] and his employment was terminated after he refused to accept the new position*." Def.'s Mot. 1. For these reasons, American National contends that Plaintiff has "failed to allege a plausible claim that 'but-for' his race, [it] would not have demoted him, and that 'but-for' either his race or his complaint[,] his employment would not have ended." *Id.* at 1-2.

Plaintiff disagrees that his claims are insufficiently pleaded. He contends that Defendant is attempting to hold him to an improper heightened pleading standard. He further contends that Defendant's argument, that his pleadings are insufficient to establish a prima facie case of discrimination, is better suited for summary judgment. Finally, he asserts that the June 4, 2019 internal complaint is outside the pleadings and should not be considered by the court.

Defendant replies that Plaintiff is the one who is mischaracterizing the applicable legal standard, and, contrary to his assertions, dismissal of section 1981 claims is not precluded at the pleading stage. Defendant, therefore, reasserts that dismissal is appropriate for two reasons: (1) because Plaintiff's allegations demonstrate an "exceedingly more plausible explanation for [his] demotion and termination"; and (2) the facts alleged in his Amended Complaint are insufficient to state plausible claims for relief. Def.'s Mot. 1.

For the reasons that follow, the court concludes that Plaintiff's Amended Complaint alleges enough facts to "nudge" his racial discrimination and retaliation claims "across the line from conceivable to plausible," which is all that is required at this stage of the litigation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

## II. Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.

2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th

Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

Section 1981 provides that "[a]ll persons within the. . . United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). This statute is meant to serve "as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990).

### A. Disparate Treatment Racial Discrimination Under Section 1981

As noted, the parties dispute what causation standard applies to Plaintiff's racial discrimination claim under section 1981, and whether, as Defendant contends, that this claim fails as a matter of law because a more plausible alternative explanation exists for Plaintiff's demotion and termination—his refusal to sign an employment contract that would demote him to a significantly lower paying position. In addition, Defendant contends that Plaintiff's June 4, 2019 internal complaint to CEO Jim Pozzi refutes the discriminatory intent required to sustain this claim. Defendant further contends that Plaintiff's disparate treatment allegations are conclusory and insufficient to show that he and James Parks are nearly identical or similarly situated in relevant respects.[1] Among other things, Defendant asserts that Plaintiff does not allege that he and James

---

[1] In a footnote, Defendant takes issue with an allegation in Plaintiff's Amended Complaint, contending that:

> Notably, Plaintiff alleged in the Original Complaint that he engaged in "personal investment endeavors," while alleging that Mr. Parks pursued unspecified "financial endeavors." Original Complaint, Doc. 1 at ¶ 14. In contrast, Plaintiff alleges in the Amended Complaint that

**Memorandum Opinion and Order – Page 7**

Parks were subject to the same employment agreement, that Mr. Parks engaged in conduct that would have violated any such agreement, or that Mr. Parks, like Plaintiff, refused to cease any such conduct.

To state a section 1981 discrimination claim, a plaintiff must allege: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). Defendant's motion focuses on the second element—discriminatory intent. To satisfy his pleading burden for a § 1981 discrimination claim, Plaintiff "need not make out a prima facie case of discrimination [based on disparate treatment] . . . to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). He does, however, have the burden of initially pleading facts that, taken as true, permit the court to plausibly infer that, "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). In this regard, the Court in *Comcast* explained:

> If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the "same" legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person. [Nothing] in the statute

---

both he and Mr. Parks engaged in "personal investment endeavors." Proposed Amended Complaint at ¶ 14. However, "Rule 15(a)(2) does not permit a plaintiff to alter the factual basis of [his] suit in response to an explanation of why [the] suit lacks merit."

Def.'s Mot. 8 & n.5 (quoting *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017). This contention is misplaced and without merit, as Plaintiff did not attempt to amend his pleadings in his response to Defendant's Motion to Dismiss to allege that he and Mr. Parks both engaged in "personal investment endeavors." Instead, as Defendant acknowledges, Plaintiff amended his pleadings to make this change in his allegations. Moreover, Defendant filed his Amended Complaint containing this allegation in accordance with Federal Rule of Civil Procedure 15(a)(1), which expressly allows a party to amend his or her pleadings once as a matter of course within 21 days after serving it *or 21 days after service of a responsive pleading*, as was the case here.

**Memorandum Opinion and Order – Page 8**

> signal[s] that this test should change its stripes (only) in the face of a motion to dismiss.

*Id.* at 1015. "Although 'naked allegations' of discriminatory intent are too conclusory to survive a motion to dismiss, . . . discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted). "An allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim'" *Id.* (citations omitted).

Plaintiff argues that he has alleged sufficient facts to satisfy the second element and the but-for causation standard. The court agrees. Because an allegation that similarly situated non-minorities received better treatment "create[s] the necessary inference and sets the predicate for establishing a section 1981 claim," Plaintiff alleges enough circumstantial evidence to make a plausible inference that racial discrimination occurred in violation of § 1981 claim. *See id.* Specifically, Plaintiff alleges that he, an African American, and other Caucasian ANICO district managers, including James Parks, engaged in the same investment activities outside of work, but Defendant only punished him for engaging in such activities that were allegedly prohibited by his employment contract by requiring him to sign an agreement that would result in a demotion and decrease in pay, and firing him when he would not agree to the demotion and complained to management and Human Resources.

Moreover, contrary to Defendant's assertion, Plaintiff's pleadings and reply brief do not support its contention that he admits his employment contract prevented him from engaging in such activities. This is, at best, a strained reading of both documents. Plaintiff's refusal to sign an agreement that would result in a demotion and lower paying position also goes to the heart of his racial discrimination claim that Defendant treated black and white employees differently in

Memorandum Opinion and Order – Page 9

material respects in the making and enforcement of employment contracts. In this regard, Plaintiff alleges that Defendant discriminated against him: (1) by enforcing the employment contracts of African Americans and Caucasian ANICO district managers differently; or, alternatively, (2) by not making employment contracts with African American employees on the same terms that were offered to white employees like James Parks. Pl.'s Am. Compl. ¶ 22. From this, the court can plausibly infer that race was the but-for cause of Plaintiff's injuries because, with respect to district managers pursuing unrelated financial endeavors outside of work, Defendant treats black and white ANICO district managers differently in its making and enforcement of employment contracts.

Defendant's heavy reliance on what it refers to as an obvious more plausible alternative explanation for it demoting and firing Plaintiff is creative but misplaced. To support its contention that dismissal of a racial discrimination claim under section 1981 is appropriate when the plaintiff alleges a more plausible alternative explanation for his or her injuries, Defendant cites three unpublished cases. *See* Def.'s Mot. 5 & n.4 (citing *Doe v. Sizewise Rentals, LLC*, 530 F. App'x 171, 174 (3d Cir. 2013); *Badal v. Ariens Co.*, No. 17-C-1704, 2018 WL 3037401, at *9 (E.D. Wis. June 19, 2018); and *Frausto v. Southwest Airlines*, No. 4:19-CV-4718, 2020 WL 4060309, at *4 (S.D. Tex. June 26, 2020), *report and recommendation adopted*, 2020 WL 4059855 (S.D. Tex. July 18, 2020)). None of these cases is binding on this court, and each is distinguishable.

In affirming the dismissal of the plaintiff's racial discrimination claim under section 1981, the Third Circuit in *Sizewise* explained that the employees were not similarly situated because the comparator employee relied on by the plaintiff held an *entirely different position*; that the plaintiff had failed to allege *any* facts that would give rise to an inference of discrimination; and that the plaintiff's allegation that only minority employees were *discharged was expressly refuted by prior pleadings*. Unlike this case, "there were *no* facts [in *Sizewise* that] would plausibly support the

**Memorandum Opinion and Order – Page 10**

claim that [Doe was] discharged on the basis of race." *Sizewise Rentals, LLC*, 530 F. App'x at 174. Thus, in noting that there were other likely bases for employee dismissals, the Third Circuit did not choose between two plausible alternatives because there were no allegations that would support a claim of racial discrimination under section 1981, even if accepted as true. *See id*. (affirming dismissal of § 1981 claim because although pleadings were "replete with details" of workplace grievances, they were "devoid . . . of factual allegations indicating that . . . defendants acted with any racially discriminatory animus") (citing *Iqbal*, 556 U.S. at 683).

Likewise, in *Badal*, the district court noted the presence of an obvious alternative explanation but ultimately concluded that dismissal of the plaintiffs' racial discrimination claim under section 1981 was appropriate under the "*Twombly/Iqbal* pleading standard" because "their conclusory allegations of racial and/or ethnic discrimination" were insufficient to state a plausible claim for relief. *Badal*, 2018 WL 3037401, at *9.

Defendant's citation to *Frausto* incorrectly implies that the plaintiff's racial discrimination claim under section 1981 was dismissed because there was an obvious alternative explanation for the defendant's conduct. *See* Def.'s Mot. 5 (citing and quoting *Frausto*, 2020 WL 4060309, at *4, as follows: "dismissing Section 1981 race discrimination claim and noting that "[w]here an 'obvious alternative explanation' provides a more likely reason for the complained-of conduct, the plaintiff's claim does not cross the plausibility threshold."). This quote is included in the section of the *Frausto* opinion that sets forth the applicable pleading standard. It is not, however, the reason provided by the magistrate judge for recommending that the plaintiff's claim be dismissed. Instead, dismissal was recommended because *the plaintiff failed to allege facts plausibly suggesting that he was subjected to an adverse employment decision*. *Frausto*, 2020 WL 4060309, at *7. In addition, the docket sheet and history of this case indicate that the case and all claims

asserted by the plaintiff were subsequently dismissed by agreement of the parties. It, therefore, has limited utility and value.

Plaintiff also cites and quotes *Integra United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, for the proposition that: "Rule 8(a) prohibits any claims that are merely conceivable rather than plausible. A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and obvious alternative explanation." Def.'s Mot. 4-5 (quoting 816 F. App'x 892, 897 (5th Cir. May 28, 2020) (per curiam)). This case is similarly distinguishable, as it is unpublished and involved fraud claims under the False Claims Act, not racial discrimination or retaliation claims under section 1981. Once again, the language quoted by Defendant comes from the section of the opinion that includes the legal standard applicable to Rule 12(b)(6) motions. The Fifth Circuit in this case does note three times that certain allegations in the plaintiff's pleadings are "consistent with a legal and 'obvious alternative explanation,'" *id.* at 897-99, but it also concluded that the district court's judgment should be affirmed because the plaintiff's allegations were *conclusory* and insufficient to satisfy the pleading requirements of Rule 8(a) *and 9(b)*. *Id.* at 898, 900. Additionally, in addressing the plaintiff's contention that "the district court improperly applied a probability standard at the pleadings stage instead of a plausibility standard," the Fifth Circuit limited its response to the following, without expressly condoning the district court's reasoning for granting the motion to dismiss.

> [R]egardless of whether the district court mistakenly applied a probability standard rather than a plausibility standard, our conclusion is the same. Since "[we] may affirm the district court on any grounds supported by the record and argued in the court below," any misapplication that might have occurred here would not require us to vacate or reverse the district court's judgment.

*Id.* at 901 (footnotes and citations omitted).

Moreover, the court is aware of at least one case in which the Fifth Circuit, in addressing another appeal from the Southern District of Texas where the district court dismissed the plaintiff's age discrimination claim because of "the existence of obvious alternative explanations," vacated the dismissal of this claim and remanded for further proceedings after determining that the plaintiff had alleged sufficient facts to support each element of this claim. The Fifth Circuit, therefore, concluded that the district court erred in dismissing the plaintiff's age discrimination claim. *Haskett v. Cinco Energy Mgmt. Grp.*, 161 F. Supp. 3d 465, 470 (S.D. Tex. 2015), *aff'd in part, vacated in part, remanded*, 671 F. App'x 318 (5th Cir. 2016). For similar reasons, the court determines that dismissal of Plaintiff's racial discrimination claim at this stage, based on Defendant's causation argument, is premature and would amount to reversible error if accepted.

Additionally, aside from the flaws already noted, for the court to accept Defendant's argument that Plaintiff's racial discrimination claim under section 1981 fails as a matter of law because his pleadings support the alternative explanation for his alleged injury advocated by Defendant—"that he was demoted for *admittedly violating his district manager agreement[,] and his employment was terminated after he refused to accept the new position*," Def.'s Mot. 1, it would necessarily have to reject or disregard the allegations in Plaintiff's pleadings that his demotion and termination were the product of the racially discriminatory way in which Defendant makes and enforces employment contracts. While one could argue that a plausible alternative exists for the adverse employment action, such argument calls for some degree of speculation, and Defendant's argument does not carry the day, as Plaintiff's allegations and arguments are equally, if not more, plausible than those of Defendant. Further, as courts are required to examine the factual allegations in the light most favorable to a plaintiff, the court has no pause in reasonably inferring, at this stage, that Defendant is liable for the misconduct alleged by Plaintiff. Thus, this argument by Defendant is better suited for summary judgment or trial. Accordingly, the court

**Memorandum Opinion and Order – Page 13**

determines that the allegations in Plaintiff's Amended Complaint are sufficient to state a racial discrimination claim under § 1981 that is plausible on its face under the but-for causation standard, and it will deny Defendant's Motion to Dismiss this claim.

### B.  Retaliation Under Section 1981

Defendant argues that Plaintiff has not pleaded any facts that he was terminated in retaliation for making a complaint about his demotion, and, based on the Fifth Circuit's opinion in *Strong v. University of Healthcare System, LLC*, and the Supreme Court's opinion in *Comcast*, it contends that the temporal proximity between Plaintiff's complaint and the termination of his employment is insufficient without more:

> While Plaintiff's complaint about his demotion is temporally proximate to the date upon which his employment ended (for a job he refused to accept), in order to prevail on his claim at trial, Plaintiff will have to prove more than mere temporal proximity. *See*[] *Strong v. Univ. Healthcare Sys., L.L.C*., 482, F.3d 802, 808 (5th Cir. 2007) ("we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation"). A plaintiff must plausibly allege facts at the outset of the lawsuit that [he] will be required to prove at the trial of the case. *See*[] *Comcast Corp*., 140 S. Ct. at 1019 ("to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end.") (internal citations omitted). Plaintiff has not pled any other facts showing that he was terminated in retaliation for his complaint involving his demotion. Since temporal proximity alone is not enough to establish his entitlement to relief under Section 1981, he has not pled sufficient allegations that support a plausible conclusion that he was terminated because of his alleged participation in protected activity.

Def.'s Mot. 10-11.

In addition, Defendant asserts that, while Plaintiff alleges that he forwarded his complaint on June 4, 2019, to CEO Jim Pozzi, he does not allege that this internal complaint raised any issue of discriminatory intent based on race or that it was protected activity, and the complaint itself does not reference any discriminatory intent based on race or other protected activity. Defendant, therefore, contends that the more plausible explanation for his being fired is that he refused to sign a new employment agreement and rejected the alternative position and demotion. Defendant, thus,

argues that Plaintiff has failed to plead facts that plausibly establish that his protected activity was the "but for" cause of his alleged injuries.

Plaintiff responds that his retaliation claim under section 1981 is adequate as currently pleaded. Plaintiff further asserts that the complaint he made regarding his demotion was not limited to the written complaint he forwarded to CEO Jim Pozzi; he also complained to Human Resources that the demotion constituted racial discrimination:

> Moreover, Defendant makes much ado about nothing with its emphasis on the allegation in Plaintiff's first complaint that in appealing to the decision makers themselves to reconsider their demotion decision, he did not mention race (though he did refer to himself as having been "discriminated against.") But in this case there are two adverse actions (demotion and termination), and Plaintiff's complaint of race discrimination came between the two. Accordingly, just prior to his termination, Plaintiff appropriately went to Human Resources and complained specifically that the demotion constituted race discrimination. As previously indicated, Plaintiff has plead[ed] that substantially similar Caucasian comparators, who did not complain of discrimination but engaged in other business in violation of the district manager agreement, were not (demoted or) terminated. Accordingly, with respect to his retaliation claim, facts presented in support of his retaliation claim were not just limited to temporal proximity as Defendant would have it, but also included that Plaintiff was not offered the same terms as employees that did not complain of discrimination. Plaintiff has therefore plausibly plead[ed] but for causation as to his retaliation claim.

Pl.'s Resp. 7-8.

As previously noted, Plaintiff also contends that Defendant's evidence of the written complaint he sent to his supervisor in June 2019 after his demotion is outside the pleadings and should not be considered in ruling on Defendant's motion. The court disagrees with this contention by Plaintiff. The written complaint at issue that Plaintiff forwarded to CEO Jim Pozzi is specifically referenced in his Amended Complaint and is central to his claims. *See Collins*, 224 F.3d at 498-99. The written complaint attached as an exhibit to Defendant's motion: (1) is signed by Mr. Hoyt; (2) involves the same issue alleged in Plaintiff's Amended Complaint regarding his demotion after engaging in activities outside of work; (3) disputes that his employment contract

Memorandum Opinion and Order – Page 15

precludes him from engaging in such activities; and (4) and requests a response by June 7, 2019. It, thus, appears to be the same complaint, which is not disputed by Plaintiff. In any event, consideration of this complaint does not entitle Defendant to dismissal of Plaintiff's retaliation claim.

The elements of a retaliation claim under section 1981 are: "(1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *Body by Cook, Inc.*, 869 F.3d at 330 (citing *Foley v. University of Hous. Sys.*, 355 F.3d 333, 339, 340 & n.8 (5th Cir. 2003)). As to the third causation element, the plaintiff must initially plead and ultimately prove that, but for race, he or she would not have suffered the loss of a legally protected right. *Comcast Corp.*, 140 S. Ct. at 1019.

While temporal proximity between the protected activity and the materially adverse action is not enough to prove retaliatory animus at the summary judgment stage, for purposes of deciding a motion to dismiss, courts in this Circuit have previously held that "[t]emporal proximity alone may suffice when the acts are separated by weeks," as opposed to five or more months. *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) (citing *Blasingame v. Eli Lilly & Co.*, CIV.A. H-11-4522, 2013 WL 5707324, at *15 (S.D. Tex. Oct. 18, 2013), which in turn discusses Fifth Circuit authority regarding temporal proximity); *see also Benford v. Milwaukee Elec. Tool Corp.*, 4:19-CV-179-DMB-JMV, 2021 WL 735642, at *8 (N.D. Miss. Feb. 25, 2021) (quoting *Garvin*)); *Story v. Best Way Transp. Inc.*, 3:19-CV-02704-M-BT, 2020 WL 5045658, at *5 (N.D. Tex. Aug. 4, 2020), *report and recommendation adopted*, 2020 WL 5038503 (N.D. Tex. Aug. 26, 2020) (quoting *Garvin*)). Evidence of a causal connection may, for example, include: "temporal proximity between a protected act and adverse employment action; an employment

record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin*, 391 F. Supp. 3d at 653 (citing *Blasingame*, 2013 WL 5707324, at *15).

Here, Plaintiff alleges that, after he complained on June 18, 2019, to Human Resources and again to Mr. Pozzi that his demotion was "rac[ially] discriminatory," and requested an investigation and reinstatement to his prior position, his employment was suspended and, less than a week later, on June 21, 2019, he was fired. These allegations are sufficient to satisfy the first two elements of retaliation under section 1981.

Regarding the third element, it appears from Defendant's argument—based on *Comcast*'s holding regarding but-for causation and *Strong*, a summary judgment case in which the Fifth Circuit "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation"[2]— that it is contending that temporal proximity alone, even allegations of close temporal proximity like those in this case, are no longer sufficient at the motion to dismiss stage. The court, however, does not need to resolve this issue because Plaintiff does not rely solely on temporal proximity.

In addition to alleging that there was only a short gap of three days between the time he complained to Human Resources and again to Mr. Pozzi and the time he was fired, Plaintiff also alleges that, before being demoted and terminated, he was a top performer and had received numerous awards since being promoted to the district manager position in 2013. Plaintiff further alleges that his direct supervisor, Field Director John Gara, expressed the opinion, after visiting Plaintiff's district on May 24, 2019, that it was well-run. In addition, Plaintiff alleges that, before he was demoted for engaging in personal investment endeavors outside of work, allegedly in violation of his employment contract, he and other Caucasian district managers had previously

---

[2] *See* Def.'s Mot. 10.

**Memorandum Opinion and Order – Page 17**

engaged in personal investment endeavor outside of work without any repercussions, and that Defendant's decision to demote him for this reason was not substantiated by his contract. Finally, Plaintiff alleges that Defendant gave his district to fellow Caucasian district manager James Parks. The court determines that these combined facts are sufficient to satisfy Plaintiff's burden at this stage of the proceedings to allege a causal connection between the protected activity and adverse employment action, even under the but-for causation standard. Thus, Plaintiff's allegations are sufficient for the court to reasonably infer that Defendant has engaged in retaliatory conduct. Accordingly, Defendant's Motion to Dismiss Plaintiff's retaliation claim under section 1981 will be denied.

## IV. Conclusion

For the reasons explained, the court **concludes** that Plaintiff's section 1981 claims based on racial discrimination and retaliation, as alleged in his Amended Complaint, are adequately pleaded, and the issues raised by Defendant are better suited for resolution in the context of a summary judgment motion or trial, rather than a motion to dismiss under Rule 12(b)(6). Accordingly, the court **denies** Defendant's Motion to Dismiss (Doc. 17).

**It is so ordered** this 6th day of July, 2021.

Sam A. Lindsay
United States District Judge